BOLIN, Judge.
William D. Sandifer, Jr. instituted this proceeding seeking reversal of a ruling of the Board of Review of the Department of Employment Security, State of Louisiana, which had declared Mrs. Brandao eligible to receive unemployment compensation under La.R.S. 23:1600 et seq. The lower court reversed the ruling and declared Mrs. Brandao ineligible and she appeals.
Mrs. Brandao had been employed by Mr. Sandifer for two years and five months prior to December 23, 1967, at which time she resigned her position, upon the advice of her physician, because of her pregnancy. It is neither alleged nor contended she had requested a leave of absence or that one was granted. When she returned and asked to be reemployed she was advised the position had been filled.
The sole issue is the eligibility of Mrs. Brandao to receive unemployment compensation upon the failure of the employer to reemploy her following her confinement. Stated differently, did Mrs. Brandao “leave her employment without good cause connected with (her) employment” ?
The pertinent portion of the statute, which has been interpreted in three recent Louisiana Supreme Court cases, is La.R.S. 23:1601(1):
“An individual shall be disqualified for benefits:
“(I) If the administrator finds that he has left his employment without good cause connected with his employment. * * * »
It is appellee’s argument that the decision in Algiers Homestead Association v. Brown, 246 La. 738, 167 So.2d 349 (1964) is controlling in the instant case and is authority for the judgment of the lower court. In Algiers the claimant became aware of her pregnancy and discussed with her immediate superior the possibility of being granted a leave of absence, but the latter was evasive about the matter and would give her no definite answer. It was his testimony claimant was to continue working until about September 1, 1962, but claimant became ill and, on the advice of her doctor, telephoned her employer she would not report for work on Monday, August 6, or thereafter. Her baby was born on October 13, and when she became able to work she did not apply to Homestead for reemployment because she was waiting to hear from the employer. Her claim for unemployment compensation, filed on December 10, 1962, was denied by the agency.
The Supreme Court, in reversing the judgment of the Court of Appeal which had awarded the benefits, held:
“ * * * the agency says that the claimant requested leave of absence and was entitled to an answer, which was never definitely given, and that under these circumstances she did all a reasonable person could. But, regardless of her good faith and her desire to obtain a leave, she was not successful in protecting her employment.
“In the course of its opinion the Court of Appeal said it was of the belief that the claimant was entitled to receive a *589 leave of absence and that her request for this leave was sufficient. As to this, we feel that the matter of granting the claimant a maternity leave of absence was one wholly within the discretion and control of the employer, and that her mere request for leave, not acceded to by the employer, did not operate to confer such a leave.”
Appellant contends two recent Southern Bell cases decided by the Supreme Court specifically hold that, where no openings are available upon the return of the employee requesting employment after pregnancy and child birth, the employee is considered as having left her employment for good cause connected with the employment and qualified for unemployment compensation benefits. The cited cases are Southern Bell T. & T. Co. v. Administrator, Div. of E. S., 252 La. 519, 211 So.2d 634 (1968) and Southern Bell T. & T. v. Administrator of Div. of E. S., 252 La. 526, 211 So.2d 636 (1968).
In the Southern Bell cases, which are readily distinguishable from Algiers and the instant case, the employee was granted a maternity leave of absence in conformance with a labor agreement between the Communication Workers of America and the employer. The pertinent portion of the agreement provided:
“In all maternity cases the employee shall present to the company not later than the end of the fifth month of pregnancy a doctor’s certificate stating the probable date of confinement. After the presentation of such certificate the Company shall grant the employee’s request for a leave of absence if the leave is to begin not later than 60 days prior to the probable date of confinement. If the employee fails to request such a leave, the Company shall place the employee on a six months leave of absence to begin 60 days prior to the probable date of confinement. * * * ”
The Courts of Appeal had held the employee’s “leaving” was because of pregnancy, which was a cause unconnected with the employment, and had denied eligibility for compensation. The Supreme Court, in reversing these judgments, made the following pronouncements:
“We find that a mere reference to the collective bargaining agreement will show there was no termination of the employer-employee relationship in the sense required by R.S. 23:1601(1) in this case when Mrs. Middleton obtained her leave of absence. The statutory language relating to disqualification for benefits refers to one who ‘has left (her) employment’ and no serious contention can be made that Mrs. Middleton ‘left (her) employment’ when she went on a leave of absence as the result of her pregnancy made compulsory under her contract of employment. Article 6A (2) of the labor agreement under which she was employed clearly established the compulsory nature of this leave of absence wherein it provides, ‘If the employee fails to request such a leave, the Company shall place the employee on a six months leave of absence.’ The agreement between the employer and the employee clearly contemplates a return to a duty status, and, in fact, creates a legal right on the part of Mrs. Middleton to be returned to such status in accordance with that portion of the contract which provides, ‘The employee shall be reinstated in the same exchange on the same or an equal job as which (she) was working prior to the leave if work is available in such exchange and on such job.’ Under this provision if there was work available for Mrs. Middleton at the expiration of her leave, the company was duty bound to reinstate her. Hence, the fundamental and underlying cause of Mrs. Middleton’s unemployment following her application for reinstatement was not her prior condition of pregnancy but the then existing unavailability of work on the part of the employer, and it was only at this time that she ‘left (her) employment’.” (italics in original opinion).
*590 In the case before us there was never any discussion concerning a maternity leave when Mrs. Brandao resigned and there was no labor agreement, company policy or understanding that plaintiff was to be reinstated. Under the facts as found we consider the Algiers case controlling.
The judgment of the lower court is affirmed.